FILED
U S DISTRICT COURT
DISTRICT OF MARYLAND

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

2018 MAR 12  P 3: 00

CASE NO. TDC-18-0011

UNITED STATES OF AMERICA

v.

TRANSPORT LOGISTICS
INTERNATIONAL, INC.,

        Defendant.

_____/

## DEFERRED PROSECUTION AGREEMENT

Defendant Transport Logistics International, Inc. (the "Company"), pursuant to authority granted by the Company's Board of Directors, and the United States Department of Justice, Criminal Division, Fraud Section and the United States Attorney's Office for the District of Maryland (the "Fraud Section and the Office"), enter into this deferred prosecution agreement (the "Agreement").

### Criminal Information and Acceptance of Responsibility

1.      The Company acknowledges and agrees that the Fraud Section and the Office will file the attached one-count criminal Information in the United States District Court for the District of Maryland charging the Company with one count of conspiracy to commit an offense against the United States, in violation of Title 18, United States Code, Section 371, that is, to violate the anti-bribery provisions of the Foreign Corrupt Practices Act of 1977 ("FCPA"), as amended, Title 15, United States Code, Section 78dd-2. In so doing, the Company: (a) knowingly waives its right to indictment on this charge, as well as all rights to a speedy trial

pursuant to the Sixth Amendment to the United States Constitution, Title 18, United States Code, Section 3161, and Federal Rule of Criminal Procedure 48(b); and (b) knowingly waives any objection with respect to venue to any charges by the United States arising out of the conduct described in the Statement of Facts attached hereto as Attachment A (the "Statement of Facts") and consents to the filing of the Information, as provided under the terms of this Agreement, in the United States District Court for the District of Maryland. The Fraud Section and the Office agree to defer prosecution of the Company pursuant to the terms and conditions described below.

2. The Company admits, accepts, and acknowledges that it is responsible under United States law for the acts of its officers, directors, employees, and agents as charged in the Information, and as set forth in the Statement of Facts, and that the allegations described in the Information and the facts described in the Statement of Facts are true and accurate. Should the Fraud Section and the Office pursue the prosecution that is deferred by this Agreement, the Company stipulates to the admissibility of the Statement of Facts in any proceeding by the Fraud Section and the Office, including any trial, guilty plea, or sentencing proceeding, and will not contradict anything in the Statement of Facts at any such proceeding.

### Term of the Agreement

3. This Agreement is effective for a period beginning on the date on which the Information is filed and ending three years from that date (the "Term"). The Company agrees, however, that, in the event the Fraud Section and the Office determine, in their sole discretion, that the Company has knowingly violated any provision of this Agreement or has failed to completely perform or fulfill each of the Company's obligations under this Agreement, an extension or extensions of the Term may be imposed by the Fraud Section and the Office, in their sole discretion, for up to a total additional time period of one year, without prejudice to the

Fraud Section's and the Office's right to proceed as provided in Paragraphs 16-20 below. Any extension of the Agreement extends all terms of this Agreement, including the terms of the reporting requirement in Attachment D, for an equivalent period. Conversely, in the event the Fraud Section and the Office find, in their sole discretion, that there exists a change in circumstances sufficient to eliminate the need for the reporting requirement in Attachment D, and that the other provisions of this Agreement have been satisfied, the Agreement may be terminated early. If the Court rejects the Agreement, all the provisions of the Agreement shall be deemed null and void, and the Term shall be deemed to have not begun.

### Relevant Considerations

4. The Fraud Section and the Office enter into this Agreement based on the individual facts and circumstances presented by this case and the Company, including:

    a. the Company did not receive voluntary disclosure credit because it did not voluntarily and timely disclose to the Fraud Section and the Office the conduct described in the Statement of Facts;

    b. the Company received full credit for its substantial cooperation with the Fraud Section and the Office's investigation, including interviewing and providing downloads of facts from the relevant witnesses, including a witness based in Russia to whom the Fraud Section and the Office did not have access; reviewing emails and financial records; voluntarily organizing, identifying, and producing documents that assisted the government's prosecution of individuals;

    c. the Company provided to the Fraud Section and the Office all relevant facts known to it, including information about the individuals involved in the misconduct;

    d. the Company engaged in remedial measures, including terminating the employment of all employees who engaged in the misconduct;

3

e.  the Company has instituted an enhanced compliance program and committed to continuing to enhance its internal controls, including by: (1) designating an individual to serve as TLI's Chief Compliance Officer; (2) instituting policies prohibiting (i) payments to bank accounts that are not in the name of the company/persons who is owed the payment, (ii) payments made in a country other than where the person/company resides or where the services are rendered, and (iii) payments for rebates, discounts, commission, or remuneration that are not specified in bids or contracts; (3) implementing payment controls, including requiring multiple reviews for payment requests and two signatures on check registers; and (4) committing to ensure that its compliance program satisfies the minimum elements set forth in Attachment C to this Agreement (Corporate Compliance Program);

f.  based on the Company's remediation, the state of its compliance program, the Company's relatively small size and risk profile, and the Company's agreement to report to the Fraud Section and the Office as set forth in Attachment D to this Agreement (Corporate Compliance Reporting), the Fraud Section and the Office determined that an independent compliance monitor was unnecessary;

g.  the nature and seriousness of the offense conduct, including a long-running scheme in which high-level executives at TLI agreed to pay over a million dollars in bribes at the direction of, and for the benefit of, a Russian official;

h.  the Fraud Section and the Office have been able to prosecute individuals responsible for the illegal conduct;

i.  the Company has no prior criminal history;

j.  the Company has agreed to continue to cooperate with the Fraud Section and the Office in any ongoing investigation of the conduct of the Company, its subsidiaries and

4

affiliates, and its officers, directors, employees, agents, business partners, and consultants relating to violations of the FCPA; and

k.  although the Company received full cooperation and remediation credit, and thus a penalty of 25 percent off the bottom of the applicable U.S. Sentencing Guidelines fine range, after the Fraud Section and the Office, with the assistance of a forensic accounting expert, conducted an independent inability to pay analysis, it was determined that a penalty greater than $2 million would substantially jeopardize the continued viability of the Company;

l.  accordingly, despite the seriousness of the offense and the fact that employees at the highest-level of the Company were responsible for the misconduct, due to the ability of the Fraud Section and the Office to prosecute culpable individual wrongdoers, the significant collateral consequences that a guilty plea by the Company would have on innocent employees and affiliates, the significant cooperation and remediation undertaken by the Company, including assisting the Fraud Section and the Office in prosecuting culpable individuals, the fact that a penalty greater than $2 million would substantially jeopardize the continued viability of the Company, and the other considerations outlined in (a) through (h) above, the Fraud Section and the Office have determined that a deferred prosecution agreement and a penalty of $2 million is sufficient but not greater than necessary to achieve the purposes described in 18 U.S.C. § 3553.

### Future Cooperation and Disclosure Requirements

5.  The Company shall cooperate fully with the Fraud Section and the Office in any and all matters relating to the conduct described in this Agreement and the Statement of Facts and other conduct under investigation by the Fraud Section and the Office at any time during the Term, subject to applicable law and regulations, until the later of the date upon which all investigations and prosecutions arising out of such conduct are concluded, or the end of the term

specified in Paragraph 3 above. At the request of the Fraud Section and the Office, the Company shall also cooperate fully with other domestic or foreign law enforcement and regulatory authorities and agencies, as well as the Multilateral Development Banks ("MDBs"), in any investigation of the Company, its parent company or its affiliates, or any of its present or former officers, directors, employees, agents, and consultants, or any other party, in any and all matters relating to the conduct described in this Agreement and the Statement of Facts and other conduct under investigation by the Fraud Section and the Office at any time during the Term. The Company agrees that its cooperation pursuant to this Paragraph shall include, but not be limited to, the following:

    a.    The Company shall truthfully disclose all factual information not protected by a valid claim of attorney-client privilege or attorney work product doctrine with respect to its activities, those of its parent company and affiliates, and those of its present and former directors, officers, employees, agents, and consultants, including any evidence or allegations and internal or external investigations, about which the Company has any knowledge or about which the Fraud Section and the Office may inquire. This obligation of truthful disclosure includes, but is not limited to, the obligation of the Company to provide to the Fraud Section and the Office, upon request, any document, record or other tangible evidence about which the Fraud Section and the Office may inquire of the Company.

    b.    Upon request of the Fraud Section and the Office, the Company shall designate knowledgeable employees, agents, or attorneys to provide to the Fraud Section and the Office the information and materials described in Paragraph 5(a) above on behalf of the Company. It is further understood that the Company must at all times provide complete, truthful, and accurate information.

c. The Company shall use its best efforts to make available for interviews or testimony, as requested by the Fraud Section and the Office, present or former officers, directors, employees, agents, and consultants of the Company. This obligation includes, but is not limited to, sworn testimony before a federal grand jury or in federal trials, as well as interviews with domestic or foreign law enforcement and regulatory authorities. Cooperation under this Paragraph shall include identification of witnesses who, to the knowledge of the Company, may have material information regarding the matters under investigation.

d. With respect to any information, testimony, documents, records, or other tangible evidence provided to the Fraud Section and the Office pursuant to this Agreement, the Company consents to any and all disclosures, subject to applicable law and regulations, to other governmental authorities, including United States authorities and those of a foreign government, as well as the MDBs, of such materials as the Fraud Section and the Office, in their sole discretion, shall deem appropriate.

6. In addition to the obligations in Paragraph 5 above, during the Term, should the Company learn of any evidence or allegation of conduct that may constitute a violation of the FCPA anti-bribery provisions had the conduct occurred within the jurisdiction of the United States, the Company shall promptly report such evidence or allegation to the Fraud Section and the Office.

## Payment of Monetary Penalty

7. The Fraud Section and the Office and the Company agree that application of the United States Sentencing Guidelines ("USSG" or "Sentencing Guidelines") to determine the applicable fine range yields the following analysis:

a. The 2016 USSG are applicable to this matter.[1]

b. <u>Offense Level</u>. Based upon USSG § 2C1.1, the total offense level is 42, calculated as follows:

| | | |
|---|---|---:|
| (a)(2) | Base Offense Level | 12 |
| (b)(1) | Multiple Bribes | +2 |
| (b)(2) | Value of benefit received more than $9,500,000 | +20 |
| **TOTAL** | | 34 |

c. <u>Base Fine</u>. Based upon USSG § 8C2.4(a)(2), the base fine is $28,500,000

d. <u>Culpability Score</u>. Based upon USSG § 8C2.5, the culpability score is 5, calculated as follows:

| | | |
|---|---|---:|
| (a) | Base Culpability Score | 5 |
| (b)(4) | Involvement in Criminal Activity | +2 |
| (g)(2) | The organization fully cooperated in the investigation and clearly demonstrated recognition and affirmative acceptance of responsibility for its criminal conduct | -2 |
| **TOTAL** | | 5 |

<u>Calculation of Fine Range</u>:

| | |
|---|---|
| Base Fine | $28,500,000 |
| Multipliers | 1 (min)/ 2 (max) |
| Fine Range | $28,500,000 – $57,000,000 |

8. The Fraud Section and the Office and the Company agree, based on the application of the Sentencing Guidelines, that the appropriate criminal penalty is $21,375,000.

---

[1] Due to changes in USSG § 8C2.4 that potentially implicate *ex post facto* concerns, the 2014 USSG manual was used for the § 8C2.4 calculation.

8

This reflects a 25 percent discount off the bottom of the applicable Sentencing Guidelines fine range.

9.  The Company has made representations to the Fraud Section and the Office that the Company has an inability to pay a criminal penalty in excess of $2,000,000. Based on those representations, and an independent analysis verifying the accuracy of those representations conducted by the Fraud Section and the Office (with the assistance of a forensic accounting expert), the parties agree that a criminal penalty of $2,000,000 is appropriate ("Total Criminal Penalty"). Prior to the signing of this Agreement, the Federal Bureau of Investigation administratively forfeited $221,940.70 from three bank accounts controlled by the Company. Accordingly, in fulfilment of the criminal penalty, the Company agrees that the $221,940.70 will remain forfeited and, no later than ten (10) business days after the Agreement is fully executed and filed, the Company shall pay the remaining $1,778,059.30 to the United States Treasury. The Company and the Fraud Section and the Office agree that this penalty is appropriate given the facts and circumstances of this case, including the Relevant Considerations outlined in Paragraph 4 above. The Total Criminal Penalty is final and shall not be refunded. Furthermore, nothing in this Agreement shall be deemed an agreement by the Fraud Section and the Office that $2,000,000 is the maximum penalty that may be imposed in any future prosecution, and the Fraud Section and the Office are not precluded from arguing in any future prosecution that the Court should impose a higher fine, although the Fraud Section and the Office agree that under those circumstances, they will recommend to the Court that any amount paid under this Agreement should be offset against any fine the Court imposes as part of a future judgment. The Company acknowledges that no tax deduction may be sought in connection with the payment of any part of the $2,000,000 penalty. The Company shall not seek or accept directly or indirectly

reimbursement or indemnification from any source, other than its parent company, with regard to the penalty or forfeiture amounts that the Company pays pursuant to this Agreement or any other agreement entered into with an enforcement authority or regulator concerning the facts set forth in the Statement of Facts.

### Conditional Release from Liability

10. Subject to Paragraphs 16-20 below, the Fraud Section and the Office agree, except as provided in this Agreement, that they will not bring any criminal or civil case against the Company or any of its subsidiaries relating to any of the conduct described in the Statement of Facts or the Criminal Information filed pursuant to this Agreement. The Fraud Section and the Office, however, may use any information related to the conduct described in the Statement of Facts against the Company: (a) in a prosecution for perjury or obstruction of justice; (b) in a prosecution for making a false statement; (c) in a prosecution or other proceeding relating to any crime of violence; or (d) in a prosecution or other proceeding relating to a violation of any provision of Title 26 of the United States Code.

    a. This Agreement does not provide any protection against prosecution for any future conduct by the Company.

    b. In addition, this Agreement does not provide any protection against prosecution of any individuals, regardless of their affiliation with the Company.

### Corporate Compliance Program

11. The Company represents that it has implemented and will continue to implement a compliance and ethics program designed to prevent and detect violations of the FCPA and other applicable anti-corruption laws throughout its operations, including those of its affiliates, agents, and joint ventures, and those of its contractors and subcontractors whose responsibilities

10

include interacting with foreign officials or other activities carrying a high risk of corruption, including, but not limited to, the minimum elements set forth in Attachment C.

12. In order to address any deficiencies in its internal accounting controls, policies, and procedures, the Company represents that it has undertaken, and will continue to undertake in the future, in a manner consistent with all of its obligations under this Agreement, a review of its existing internal accounting controls, policies, and procedures regarding compliance with the FCPA and other applicable anti-corruption laws. Where necessary and appropriate, the Company agrees to modify its compliance program, including internal controls, compliance policies, and procedures in order to ensure that it maintains: (a) an effective system of internal accounting controls designed to ensure the making and keeping of fair and accurate books, records, and accounts; and (b) a rigorous anti-corruption compliance program that incorporates relevant internal accounting controls, as well as policies and procedures designed to effectively detect and deter violations of the FCPA and other applicable anti-corruption laws. The compliance program, including the internal accounting controls system will include, but not be limited to, the minimum elements set forth in Attachment C.

## Corporate Compliance Reporting

13. The Company agrees that it will report to the Fraud Section and the Office annually during the Term regarding remediation and implementation of the compliance measures described in Attachment C. These reports will be prepared in accordance with Attachment D.

## Deferred Prosecution

14. In consideration of the undertakings agreed to by the Company herein, the Fraud Section and the Office agree that any prosecution of the Company for the conduct set forth in the Statement of Facts be and hereby is deferred for the Term. To the extent there is conduct

disclosed by the Company that is not set forth in the Statement of Facts, such conduct will not be exempt from further prosecution and is not within the scope of or relevant to this Agreement.

15.     The Fraud Section and the Office further agree that if the Company fully complies with all of its obligations under this Agreement, the Fraud Section and the Office will not continue the criminal prosecution against the Company described in Paragraph 1 above and, at the conclusion of the Term, this Agreement shall expire.  Further, within six months after the Agreement's expiration, the Fraud Section and the Office shall seek dismissal with prejudice of the criminal Information filed against the Company described in Paragraph 1 above, and agree not to file charges in the future against the Company based on the conduct described in this Agreement and the Statement of Facts.

## Breach of the Agreement

16.     If, during the Term, the Company (a) commits any felony under U.S. federal law; (b) provides in connection with this Agreement deliberately false, incomplete, or misleading information, including in connection with its disclosure of information about individual culpability; (c) fails to cooperate as set forth in Paragraphs 5 and 6 above; (d) fails to implement a compliance program as set forth in Paragraphs 9 and 10 above and Attachment C; or (e) otherwise fails to completely perform or fulfill each of the Company's obligations under the Agreement, regardless of whether the Fraud Section and the Office become aware of such a breach after the Term is complete, the Company and its subsidiaries shall thereafter be subject to prosecution for any federal criminal violation of which the Fraud Section and the Office have knowledge, including, but not limited to, the charges in the Information described in Paragraph 1 above, which may be pursued by the Fraud Section and the Office in the U.S. District Court for the District of Maryland or any other appropriate venue.  Determination of whether the Company

has breached the Agreement and whether to pursue prosecution of the Company shall be in the Fraud Section and the Office's sole discretion. Any such prosecution may be premised on information provided by the Company or its personnel. Any such prosecution relating to the conduct described in the Statement of Facts or relating to conduct known to the Fraud Section and the Office prior to the date on which this Agreement was signed that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against the Company, notwithstanding the expiration of the statute of limitations, between the signing of this Agreement and the expiration of the Term plus one year. Thus, by signing this Agreement, the Company agrees that the statute of limitations with respect to any such prosecution that is not time-barred on the date of the signing of this Agreement shall be tolled for the Term plus one year. In addition, the Company agrees that the statute of limitations as to any violation of federal law that occurs during the Term will be tolled from the date upon which the violation occurs until the earlier of the date upon which the Fraud Section and the Office are made aware of the violation or the duration of the Term plus five years, and that this period shall be excluded from any calculation of time for purposes of the application of the statute of limitations.

17. In the event the Fraud Section and the Office determine that the Company has breached this Agreement, the Fraud Section and the Office agree to provide the Company with written notice of such breach prior to instituting any prosecution resulting from such breach. Within 30 days of receipt of such notice, the Company shall have the opportunity to respond to the Fraud Section and the Office in writing to explain the nature and circumstances of such breach, as well as the actions the Company has taken to address and remediate the situation,

which explanation the Fraud Section and the Office shall consider in determining whether to pursue prosecution of the Company.

18. In the event that the Fraud Section and the Office determine that the Company has breached this Agreement: (a) all statements made by or on behalf of the Company to the Fraud Section and the Office or to the Court, including the Statement of Facts, and any testimony given by the Company before a grand jury, a court, or any tribunal, or at any legislative hearings, whether prior or subsequent to this Agreement, and any leads derived from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings brought by the Fraud Section and the Office against the Company; and (b) the Company shall not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that any such statements or testimony made by or on behalf of the Company prior or subsequent to this Agreement, or any leads derived therefrom, should be suppressed or are otherwise inadmissible. The decision whether conduct or statements of any current director, officer or employee, or any person acting on behalf of, or at the direction of, the Company, will be imputed to the Company for the purpose of determining whether the Company has violated any provision of this Agreement shall be in the sole discretion of the Fraud Section and the Office.

19. The Company acknowledges that the Fraud Section and the Office have made no representations, assurances, or promises concerning what sentence may be imposed by the Court if the Company breaches this Agreement and this matter proceeds to judgment. The Company further acknowledges that any such sentence is solely within the discretion of the Court and that nothing in this Agreement binds or restricts the Court in the exercise of such discretion.

20.     Thirty days prior to the end of the period of deferred prosecution specified in this Agreement, the Company, by the Chief Executive Officer of the Company and the Chief Financial Officer of the Company, will certify to the Fraud Section and the Office that the Company has met its disclosure obligations pursuant to Paragraph 6 above. Each certification will be deemed a material statement and representation by the Company to the executive branch of the United States for purposes of 18 U.S.C. § 1001, and it will be deemed to have been made in the judicial district in which this Agreement is filed.

### Sale, Merger, or Other Change in Corporate Form of Company

21.     Except as may otherwise be agreed by the parties in connection with a particular transaction, the Company agrees that in the event that, during the Term, it undertakes any change in corporate form, including if it sells, merges, or transfers business operations that are material to the Company's consolidated operations, or to the operations of any subsidiaries or affiliates involved in the conduct described in the Statement of Facts, as they exist as of the date of this Agreement, whether such sale is structured as a sale, asset sale, merger, transfer, or other change in corporate form, it shall include in any contract for sale, merger, transfer, or other change in corporate form a provision binding the purchaser, or any successor in interest thereto, to the obligations described in this Agreement. The purchaser or successor in interest must also agree in writing that the Fraud Section's and the Office's ability to breach under this Agreement is applicable in full force to that entity. The Company agrees that the failure to include these provisions in the transaction will make any such transaction null and void. The Company shall provide notice to the Fraud Section and the Office at least 30 days prior to undertaking any such sale, merger, transfer, or other change in corporate form. If the Fraud Section and the Office notify the Company prior to such transaction (or series of transactions) that they have determined

15

that the transaction(s) has the effect of circumventing or frustrating the enforcement purposes of this Agreement, as determined in the sole discretion of the Fraud Section and the Office, the Company agrees that such transaction(s) will not be consummated.  In addition, if at any time during the Term the Fraud Section and the Office determine in their sole discretion that the Company has engaged in a transaction(s) that has the effect of circumventing or frustrating the enforcement purposes of this Agreement, they may deem it a breach of this Agreement pursuant to Paragraphs 16-20 above.  Nothing herein shall restrict the Company from indemnifying (or otherwise holding harmless) the purchaser or successor in interest for penalties or other costs arising from any conduct that may have occurred prior to the date of the transaction, so long as such indemnification does not have the effect of circumventing or frustrating the enforcement purposes of this Agreement, as determined by the Fraud Section and the Office.

### Public Statements by Company

22.     The Company expressly agrees that it shall not, through present or future attorneys, officers, directors, employees, agents or any other person authorized to speak for the Company make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility by the Company set forth above or the facts described in the Statement of Facts.  Any such contradictory statement shall, subject to cure rights of the Company described below, constitute a breach of this Agreement, and the Company thereafter shall be subject to prosecution as set forth in Paragraphs 16 through 20 above.  The decision whether any public statement by any such person contradicting a fact contained in the Statement of Facts will be imputed to the Company for the purpose of determining whether it has breached this Agreement shall be at the sole discretion of the Fraud Section and the Office.  If the Fraud Section and the Office determine that a public statement by any such person contradicts in whole or in part a statement

16

contained in the Statement of Facts, the Fraud Section and the Office shall so notify the Company, and the Company may avoid a breach of this Agreement by publicly repudiating such statement(s) within five business days after notification. The Company shall be permitted to raise defenses and to assert affirmative claims in other proceedings relating to the matters set forth in the Statement of Facts, provided that such defenses and claims do not contradict, in whole or in part, a statement contained in the Statement of Facts. This Paragraph does not apply to any statement made by any present or former officer, director, employee, or agent of the Company in the course of any criminal, regulatory, or civil case initiated against such individual, unless such individual is speaking on behalf of the Company.

23.   The Company agrees that if it, its parent company, or any of its direct or indirect subsidiaries or affiliates issues a press release or holds any press conference in connection with this Agreement, the Company shall first consult with the Fraud Section and the Office to determine (a) whether the text of the release or proposed statements at the press conference are true and accurate with respect to matters between the Fraud Section and the Office and the Company; and (b) whether the Fraud Section and the Office has any objection to the release.

24.   The Fraud Section and the Office agree, if requested to do so, to bring to the attention of law enforcement and regulatory authorities the facts and circumstances relating to the nature of the conduct underlying this Agreement, including the nature and quality of the Company's cooperation and remediation. By agreeing to provide this information to such authorities, the Fraud Section and the Office are not agreeing to advocate on behalf of the Company, but rather are agreeing to provide facts to be evaluated independently by such authorities.

### Limitations on Binding Effect of Agreement

25. This Agreement is binding on the Company and the Fraud Section and the Office but specifically does not bind any other component of the Department of Justice, other federal agencies, or any state, local or foreign law enforcement or regulatory agencies, or any other authorities, although the Fraud Section and the Office will bring the cooperation of the Company and its compliance with its other obligations under this Agreement to the attention of such agencies and authorities if requested to do so by the Company.

### Notice

26. Any notice to the Fraud Section and the Office under this Agreement shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to Daniel S. Kahn, Deputy Chief, Fraud Section, Criminal Division, U.S. Department of Justice, 1400 New York Avenue, NW, Washington, D.C. 20005; as well as, David I. Salem, Assistant United States Attorney, United States Attorney's Office for the District of Maryland, Southern Division, 6406 Ivy Lane Suite 800, Greenbelt, MD 20770. Any notice to the Company under this Agreement shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to Thomas M. Buchanan, Winston & Strawn, 1700 K Street, N.W., Washington, D.C. 20006. Notice shall be effective upon actual receipt by the Fraud Section and the Office or the Company.

### Complete Agreement

27. This Agreement, including its attachments, sets forth all the terms of the agreement between the Company and the Fraud Section and the Office. No amendments, modifications or additions to this Agreement shall be valid unless they are in writing and signed

by the Fraud Section and the Office, the attorneys for the Company and a duly authorized representative of the Company.

**AGREED:**

**FOR TRANSPORT LOGISTICS INTERNATIONAL, INC.:**

Date: 1-12-18

By: _____
Adrien Magnan
Chief Executive Officer and Chief Operating Officer
TRANSPORT LOGISTICS INTERNATIONAL, INC.

Date: 1/12/18

By: _____
Thomas M. Buchanan
WINSTON & STRAWN LLP

**FOR THE DEPARTMENT OF JUSTICE:**

SANDRA L. MOSER
Acting Chief, Fraud Section
Criminal Division
United States Department of Justice

Date: 1/12/18

BY: _____
Christopher J. Cestaro
Ephraim Wernick
Assistant Chiefs

Derek J. Ettinger
Trial Attorney

(cont'd)

**FOR THE UNITED STATES ATTORNEY'S OFFICE FOR THE DISTRICT OF MARYLAND:**

                                              STEPHEN M. SCHENNING
                                              Acting United States Attorney
                                              District of Maryland

Date: Jan. 12, 2018                BY: _____
                                             David I. Salem
                                             Michael T. Packard
                                             Assistant United States Attorneys